AUGUST GRANZ, Respondent, v. LOUIS LICHTENHEIN, Appellant.

*Master and servant — effect of the employee's removal from the State — presumption as to wages.*

If a person, although employed by contract to work for another as foreman at his mill, is put at some other place and some other work, nothing being said as to wages, a presumption will arise that he is working at the wages fixed by the contract; but such presumption will not arise where the employee, at the request of the employer, removes to a foreign state and renders no service for the employer there, although the employer pays the amount of the employee's board in such foreign state.

APPEAL by the defendant, Louis Lichtenhein, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Montgomery on the 24th day of September, 1894, upon the verdict of a jury rendered after a trial at the Montgomery Circuit, and also from an order entered in said clerk's office on the 12th day of October, 1894, denying the defendant's motion for a new trial made upon the minutes, with notice of an intention to bring up for review upon such appeal said order.

*Charles S. Nisbet* and *Matthew Hale*, for the appellant.

*Book & Stewart* and *Edward P. White*, for the respondent.

PUTNAM, J. :

It was conceded on the trial that in July, 1892, defendant entered into a contract with the plaintiff for the employment of the latter and his wife at defendant's mill in Amsterdam, N. Y., at twenty dollars per week for plaintiff and fifteen dollars for his wife, plaintiff to first go to Europe and perform services for defendant there, while his wife should at once enter on her employment at the mill. Plaintiff claimed that under the contract the twenty dollars per week should be paid while he was abroad in addition to his expenses, while defendant insisted that the twenty dollars was only to commence when plaintiff began work at the mill, and, while in Europe, defendant was only to pay his expenses. Plaintiff also insisted that from the date of the contract wages were to be paid himself and wife at the rate of thirty-five dollars per week whether defendant's mill was or was not running.

It is not clear from the testimony of plaintiff and his wife, and the conversation between the parties in July, 1892, as related by them, what the understanding was as to plaintiff receiving compensation besides his expenses while in Europe. But plaintiff, as a witness, testified to a conversation between defendant and himself on the 19th day of November, 1892, after his return from Europe; that defendant then said : " 'You will have to take the midnight train and go to New York and wait for the machinery, and look for a machine to make a point like that ; ' I didn't like to go back to New York ; I says, 'Who will pay for this time ; ' he says, ' You will get your money for this time, when you started for Germany ; ' I said, 'The 23d July, 1892 ; ' he says, 'From this time you will get your wages, from the 23d July ; I pay your wife $15 a week and you $20, and you get your wages from that time ; ' he says, ' You go to my uncle, Boscoits, and tell him that is all right, and ask him every time for instructions."

The above-quoted testimony made it appear that defendant then admitted that plaintiff and his wife were to receive thirty-five dollars per week from the 23d day of July, 1892, to the date of the conversation. The jury saw plaintiff on the stand as a witness and heard him testify, and also saw and heard defendant, who contradicted him, and evidently believed the statement of the former. We could not properly in such a case set aside the verdict of the

jury — although defendant's statement of the transaction seems to be corroborated by facts in the case which will be afterwards considered.

On this admission of the defendant the jury, crediting the statement made by the plaintiff, could find that the latter was entitled to twenty dollars per week when in Europe and also when he went to and remained in New York in pursuance of defendant's instructions, and until November 25, 1892, when he went to Philadelphia.

If the jury had only found for the plaintiff weekly compensation for services claimed between July 23 and November 25, 1892, the evidence would have sustained the verdict.

Plaintiff went to Philadelphia on November 25, 1892, and remained there until April 27, 1893, a period of about five months. He then came to New York and remained until June. In June he went to Amsterdam, but did not commence work until August fifteenth. He was thus unemployed for about nine months. He claims for this period twenty dollars per week.

It may be inferred from the evidence that defendant and plaintiff, the one as principal and the other as agent, had violated the statute of the United States in regard to importing foreign laborers, and hence, when the plaintiff went to Philadelphia, it was desirable to have him without the State. The jury could have found from the evidence that he went to Philadelphia at the request of the defendant, and that the latter paid his expenses while there. It is evident that plaintiff performed no actual services for defendant during the time he was in Philadelphia or before his employment in defendant's mill in August, 1893.

Was plaintiff entitled to recover of defendant twenty dollars per week for the five months he was in Philadelphia, and for the time he was afterwards in New York and at Amsterdam before he commenced work in August, 1893?

He was not under the provisions of the contract of employment of July, 1892. Assuming that the terms of that contract were as claimed by plaintiff, there was no provision in it under which the latter can recover for the nine months he was thus unemployed. Under the contract he was to go to Europe and on returning enter defendant's mill as foreman. After he returned from Europe a state of facts evidently arose not contemplated by the parties when

the contract was made which rendered it necessary or desirable for the plaintiff to leave the State, and he, at the request of the defendant, or by mutual agreement of the parties, left and remained without the State for five months, and, for several months in addition, performed no service for defendant.

The parties thus by consent abandoned or suspended the operation of the contract and entered into a new agreement. Under the old contract the plaintiff on his return from Europe was to perform services as foreman for defendant in his mill at twenty dollars per week and, I infer, board and maintain himself. Under the new agreement the defendant paid plaintiff's expenses at a hotel in Philadelphia, the latter performing no services for the defendant. Under the original contract defendant had not agreed to pay plaintiff twenty dollars a week and his expenses while sojourning in Philadelphia on his return from Europe. The contract did not cover such a case. Plaintiff was in Philadelphia under a new arrangement or agreement made on the 25th day of November, 1892.

Nor do we think that, under the circumstances of this case, the law will presume a contract on the part of defendant to pay plaintiff for his time in Philadelphia and during the nine months in question at the rate he had agreed to pay for his services as foreman. Doubtless if plaintiff, although under the contract employed to work for defendant as foreman at his mill, had been put at some other place and at some other work, nothing being said as to wages, a presumption would have arisen that he was working at the wages fixed by the contract. But in this case we think no such presumption could arise. Plaintiff during the time in question was not in defendant's employment. It was not a case where he continued at work for defendant under the contract of July, 1892, the character of the work being changed by consent. The evidence shows that the performance of the contract of July, 1892, was entirely suspended or abandoned while plaintiff was in Philadelphia and during the period afterward until the commencement of work for defendant, and that he was then under a new arrangement which must determine whether he was entitled to compensation, and, if so, what.

As there was no presumption that plaintiff when absent from defendant's service at the mill during the nine months in question was employed under the original contract or entitled to the

compensation therein reserved, there was no satisfactory evidence showing that defendant agreed to pay plaintiff for his time during that period. It was not shown that Boscoits was authorized by defendant to make any contract as to plaintiff's compensation. Boscoits was only authorized to *direct his movements.* The testimony of plaintiff's wife to the effect that defendant said before plaintiff returned to the mill that he (plaintiff) "would get paid for that time" does not show that defendant had entered into any contract with plaintiff that could make the former legally liable to pay plaintiff for his time while thus unemployed.

If we assume, however, that defendant was to pay plaintiff a salary during the time in question, it does not follow that he was entitled to the same rate of compensation as fixed in the original contract. Because defendant agreed to pay him twenty dollars per week for services as foreman in his mill the law will not imply a contract to pay him the same price while he was boarding him at a hotel in Philadelphia, and while plaintiff was performing no service. The law, possibly under the circumstances, might imply a contract to pay him what his services were worth.

We conclude, therefore, that the contract of employment between the parties made in July, 1892, did not authorize a recovery for plaintiff's time while unemployed in Philadelphia and New York. That no presumption arose that plaintiff, while so unemployed, was to receive the compensation fixed by that contract. That plaintiff's sojourn in Philadelphia and New York after his return from Europe must be deemed a suspension or abandonment of the contract under a new arrangement which must determine whether or not plaintiff was entitled to wages, and, if so, what. We also think that there was no satisfactory evidence to show that defendant agreed to pay plaintiff for his time while unemployed in Philadelphia and New York. If the testimony of plaintiff's wife as to the admission of defendant that plaintiff "would get paid for his time" should be deemed some evidence of such agreement, there is other testimony in the case so strongly corroborating the testimony of defendant in this regard that we think a finding that there was such an agreement would be against the weight of the evidence. It was shown that the plaintiff, after he returned from Europe, during the five months he was in Philadelphia and the four months after he returned from the latter

place and before he commenced work at defendant's mill, never asserted a claim to be paid for services. In August, 1893, he borrowed forty dollars of defendant, which was afterwards repaid. It is highly improbable that if plaintiff was entitled to wages for twelve months before he commenced labor as foreman in defendant's mill he would have allowed the whole time to pass over without making a demand for compensation, and after the lapse of a year borrow forty dollars of a party who owed him over $1,000. We think this most significant fact so corroborates the testimony of defendant as to render it a proper case to set aside the verdict of the jury as against the preponderance of the evidence under the doctrine laid down in *Bagley* v. *Bowe* (105 N. Y. 171–179) and kindred cases.

Had the jury only found in favor of the plaintiff for the recovery of the twenty dollars per week up to November twenty-fifth, the verdict would not be disturbed, because plaintiff testified to a clear admission of defendant of an agreement to compensate plaintiff at the rate of twenty dollars per week up to that time, and the jury were authorized to believe his statement. But as to plaintiff's time after November 25, 1892, there was no admission of defendant. Plaintiff was not then employed under the contract of July, 1892. Nor was there any promise of defendant to pay for such time satisfactorily shown. And the testimony of defendant, corroborated as above suggested, rendered it highly probable that the parties did not understand, under the new agreement, that plaintiff was to be paid for his time while in Philadelphia, and afterwards while he remained unemployed. The acts of plaintiff indicate that there was no such agreement.

The plaintiff also recovered for the services of his wife during the time defendant's mill was not in operation. Her testimony, on which the verdict was obtained, was contradicted by that of defendant. We think the action of the plaintiff's wife in receiving for over a year without objection payments for her services, without making any claim for compensation for time while the mill was not running, also in receiving pay for overtime and consenting to a reduction for working short hours — sometimes receiving less than fifteen dollars per week, and sometimes more for overwork — so corroborates the evidence of defendant that the verdict must be deemed against the weight of the evidence in this regard.

It follows that the judgment and order should be reversed and a new trial granted, costs to abide the event.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment and order reversed and a new trial ordered, costs to abide the event.